**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| Commonwealth Assisted | ) | |
| Living, LLC, Series E, | ) | |
| | ) | |
| Plaintiff. | ) | A.P. No. 20-00004-DSC |
| v. | ) | |
| | ) | |
| Vestavia Hills, Ltd. | ) | |
| d/b/a Mount Royal Towers, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter came before the Court on the Motion to Transfer Venue to the United States

District Court for the Southern District of California (the "Motion to Transfer") filed by defendant

Vestavia Hills Ltd. d/b/a Mount Royal Towers ("Vestavia Hills") (doc. 2), the Motion to Remand

and/or for Abstention (the "Motion to Remand") filed by plaintiff Commonwealth Assisted Living,

LLC, Series E ("Commonwealth") (doc. 4), Commonwealth's objection to the Motion to Transfer

(doc. 9), and Vestavia Hills's response to the Motion to Remand. (Doc. 10.) A hearing on these

matters was held on February 19, 2020. Appearing in person at the hearing were Marc P. Solomon,

Hanna Lahr and Richard J. Brockman, attorneys for Commonwealth; and Andrew P. Campbell

and John Harrison Hagood, attorneys for Vestavia Hills. Appearing by telephone for the hearing

were James P. Hill, attorney for Vestavia Hills; and William A. Smelko, attorney for Judith A.

Chance and Karen L. McElliott in the chapter 11 bankruptcy.

This Court has jurisdiction to hear the removed cause of action pursuant to 28 U.S.C. §§

1334(b), 151, and 157(a) and the United States District Court for the Northern District of

Alabama's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984 (the "amended General Order of Reference"). This is a core proceeding arising in a case under title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(1) and (2)(A).[1] *Twyman v. Wedlo, Inc.*, 204 B.R. 1006, 1011 n. 4 (Bankr. N.D. Ala. 1996) ("while a bankruptcy court may ultimately determine that a civil action is itself a non-core matter, the determinations of whether the removal of that action was proper, whether the bankruptcy court should abstain in the matter or whether the matter should be remanded to the state court, are themselves core matters."). In deciding whether to transfer, abstain, or to remand, this Court has considered the pleadings and briefs, the arguments of counsel, and the law. Accordingly, this Court finds and concludes as follows.[2]

**Procedural Background**

This case was referred here from the United States District Court for the Northern District of Alabama (the "District Court"). It is a breach of contract and declaratory judgment action that was originally commenced by Commonwealth in the circuit court of Jefferson County, Alabama (the "State Court Action"), where it was litigated for some thirteen-plus months before its removal to District Court. (Doc. 1, Ex. A.) Upon removal to the District Court, the parties moved to invoke the amended General Order of Reference and the case was referred here. (Doc. 1, Supp. 11.)

---

[1] 28 U.S.C. § 157(b)(2)(A) provides:

> (b)(2)Core proceedings include, but are not limited to—
> (I) matters concerning the administration of the estate[.]

[2] "[P]ursuant to 28 U.S.C. §§ 1334, 151, 157, and the district court's amended General Order of Reference, this Court has jurisdiction over the removed cause of action, which is now an adversary proceeding in bankruptcy." *Irwin v. Beloit Corp.*, *(In re Harnischfeger),* 246 B.R. 421, 440 (Bankr. N.D. Ala. 2000). Accordingly, this Memorandum Opinion and Order constitutes findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52 made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7052.

Essentially, the case is about the attempted sale of Mount Royal Towers, a senior living community in Vestavia Hills, Alabama.

This is not the first time these parties have landed in federal court with disputes over the sale of Mount Royal Towers. Not long after Commonwealth commenced the State Court Action on November 21, 2018, Vestavia Hills filed a lawsuit in District Court on December 17, 2018. (Doc. 4, Ex. 3 at 4, 6.) Like the State Court Action, the District Court action related to the attempted sale of Mount Royal Towers and sought declaratory judgment as well as damages for breach of contract and fraudulent misrepresentation claims. (*Id.* at 2, 6.) Because the State Court Action was already pending with substantially the same issues and parties, Commonwealth moved the District Court to abstain under the *Colorado River* doctrine, which "addresses the circumstances in which federal courts should abstain from exercising jurisdiction because a parallel lawsuit is proceeding in one or more state courts."[3] (*See id.* at 1); *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1327 (11th Cir. 2004). The District Court sided with Commonwealth, finding that certain *Colorado River* factors, and other factors, weighed in favor of abstention. (*Id.* at 8-12.) Accordingly, the District Court action was stayed. (*Id.* at 12.)

Meanwhile, the State Court Action proceeded, and the parties engaged in discovery. According to Commonwealth, and it has not been disputed, more than 38,000 documents were produced between the parties and a "number of non-party subpoenas" were issued. (Doc. 4 at 8.)

_____

[3] It should be noted that Commonwealth also moved to dismiss Vestavia Hills's federal lawsuit based on a lack of diversity jurisdiction and a failure to state a fraud claim upon which relief can be granted. Regarding diversity jurisdiction, Vestavia Hills's initial pleadings did not sufficiently allege citizenship to establish federal subject-matter jurisdiction. (Doc. 4, Ex. 3 at 6.) An amended complaint was filed, but Commonwealth moved to dismiss it on "grounds it still did not adequately allege the parties' citizenship." (*Id.*) Vestavia Hills filed a response to the motion to dismiss. (*Id.*). While the response did contain factual information that would "support subject-matter jurisdiction if included in an amended complaint," the amended complaint, as Commonwealth notes in its remand and abstention motion, "was never amended to assert such additional allegations of citizenship." (Doc. 4 at 12 n. 2.)

No depositions have been taken, however, according to the undisputed representation of Vestavia Hills's counsel. Notwithstanding, Commonwealth filed a motion for partial summary judgment as to liability on its breach of contract claims. (*Id.*) That motion is set for hearing before the state court on March 20, 2020. (*Id.*)

The State Court Action proceeded in the normal course until January 3, 2020, when Vestavia Hills filed for chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of California (the "California Bankruptcy Court"). (Doc. 10 at ¶17.) Vestavia Hills and Commonwealth separately notified the state court of the bankruptcy and, in so doing, argued for different applications of the automatic stay. (*See* Doc. 4 at ¶¶ 10, 11; *see also* Doc. 10 at ¶¶ 18, 19.) Vestavia Hills urged that the automatic stay applied to the individual guarantor defendants, not just the debtor. (Doc. 4 at ¶11.) Commonwealth contended otherwise; countering that while the automatic stay applied to the debtor, it did not stay the continuation of actions against any non-debtor defendants. (Doc. 4 at ¶ 11; Doc. 10 at ¶ 19.) The day after the state court stayed the case against Vestavia Hills only, the case was removed to District Court and was ultimately referred here, the Alabama Bankruptcy Court. (Doc. 4 at ¶ 13.)

**Findings of Fact[4]**

The property at the center of this dispute is known as Mount Royal Towers, and it includes a 147-bed independent living facility, a 98-bed licensed assisted living facility, a 129-bed licensed

---

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files, and the Court does so in this case. *See IT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975). The facts in this section are taken from the contents of this Court's file and as set out in the parties' briefing, to the extent they were not disputed at the Hearing. Notably, to establish the procedural history of this litigation and ascertain background facts relevant to this Court's analysis, this Court relies on facts from United States Magistrate Judge England's Memorandum Opinion and Order made part of this Court's file at document 4, exhibit 3.

specialty care assisted living facility for memory care, and a 143-bed skilled nursing facility, located together near Birmingham, Alabama. (Doc. 4 at ¶ 2.) When Vestavia Hills's loan with its lender, Wells Fargo, matured in December 2017, Vestavia Hills could not refinance or extend the note covering Mount Royal Towers; consequently, Mount Royal Towers was put up for sale. (Doc. 4, Ex. 3 at 2.) On March 29, 2018, Commonwealth and Vestavia Hills entered into an agreement for Commonwealth to purchase Mount Royal Towers. (*Id.* at 2.) Certain licenses and approvals were required (by the State of Alabama and other agencies) for the operation and management of Mount Royal Towers, and those "operating approvals" were conditions precedent to closing. (*Id.* at 3.) The parties executed nine amendments to the agreement which extended both the dates for obtaining outside approvals and the closing dates. (*Id.*) Ultimately, however, the sale did not close. The parties dispute why the closing never materialized and their disagreement forms the basis of the current litigation.

Commonwealth filed suit on November 21, 2018, in the circuit court of Jefferson County, Alabama, against Vestavia Hills and the individual guarantors of the Purchase Agreement for Mount Royal Towers.[5] (Doc. 4, Ex. 3 at 4, n. 9.) Commonwealth attempted to serve the defendants in the State Court Action beginning on December 14, 2018, but their efforts "were not totally successful." (*Id.* at 5.) Because service attempts were frustrated by certain defendants refusing service, Commonwealth did not complete service until February 15, 2019. (*Id.*)

---

[5] "Because the parties were still in negotiations, Commonwealth informed Vestavia Hills that while it had filed a lawsuit under seal in the Circuit Court of Jefferson County, Alabama, it would not attempt to serve the lawsuit while negotiations were ongoing. When negotiations ceased, Commonwealth's counsel sent Vestavia Hills's local California counsel an email attaching a copy of the summons and complaint. Counsel for Vestavia Hills "did not open the attachment for fear that opening it would constitute service." (Doc. 4, Ex. 3 at 5.)

Three days after Commonwealth's counsel sent local counsel for Vestavia Hills a copy of the state court summons and complaint, on December 17, 2018, Vestavia Hills filed suit against Commonwealth in the United States District Court for the Northern District of Alabama. (Doc. 4, Ex. 3 at 6.) There, United States Magistrate Judge England, who heard the case at the District Court, granted Commonwealth's motion to abstain and stayed the federal action. (*See generally,* Doc. 4. Ex. 3.) Judge England found that several factors supported abstention under *Colorado River*; namely, the potential for piecemeal litigation (likelihood of overlapping, duplicative discovery as well as the potential for conflicting rulings) and the progress already made in the State Court Action. (*Id.* at 8-10.) The District Court found other factors also weighed in favor of abstention including the reactive nature of the filing of the District Court action and the fact that certain defendants actively avoided service. (*Id.* at 7-12.) Notwithstanding the "virtually unflagging obligation" of federal courts to exercise jurisdiction, the District Court found that sufficiently exceptional circumstances existed to warrant abstention. (*Id.* at 12.)

In response to Vestavia Hills's post-bankruptcy removal of the State Court Action to District Court, Commonwealth filed the instant Motion to Remand and/or for Abstention. (Doc. 4.) Commonwealth perceives the removal as the "latest attempt to move this proceeding out of the State Court and/or delay the State Court case from moving forward." (*Id.* at 3.) Moreover, it argues that equitable considerations warrant remand and, if not remand, factors exist requiring mandatory and permissive abstention. (*Id.* at 4.)

On the other hand, Vestavia Hills, as the removing defendants, assert "related to" jurisdiction and that the removed case is a core, and non-core, matter. (Doc. 1 at ¶¶ 9-17.) With its removal action, Vestavia Hills avails itself of 28 U.S.C. §§ 1334 and 1452 to land here, the "local" or "conduit" bankruptcy court in the Northern District of Alabama. (*See* Doc. 2.) Pending also is

Vestavia Hills's Motion to Transfer Venue to the United States District Court for the Southern District of California. (Doc. 2.) In that motion, Vestavia Hills anticipates that, upon transfer, the case will be referred to the California Bankruptcy Court, otherwise known as the "home" bankruptcy court, where the debtor's chapter 11 bankruptcy case is pending.

Vestavia Hills argues that because the instant action is related to the chapter 11 case pending before the California Bankruptcy Court, it should be transferred in the interest of justice and in deference to the "home court presumption," which presumes that cases related to bankruptcy proceedings should be litigated in the court where the bankruptcy case is pending. (*Id.* at 3, 9.)

As it relates to Vestavia Hills's pending chapter 11 bankruptcy case, several motions have been filed and some are already set for hearing before the California Bankruptcy Court.[6] They include: a motion for relief from stay filed by Commonwealth (Ca. Bankr. doc. 56), a motion for sale[7] under 11 U.S.C. § 363(f) and for approval of a stalking horse agreement (Ca. Bankr. doc. 121), a motion to shorten time for the hearing on the sale and approval of stalking horse agreement (Ca. Bankr. doc. 122), and a motion by Commonwealth to compel Vestavia Hills to assume or reject the Purchase Agreement (Ca. Bankr. doc. 130) with a corresponding motion to shorten time for a hearing on the motion to compel (Ca. Bankr. doc. 131). Additionally, Vestavia Hills has filed an adversary proceeding seeking extension of the automatic stay to the individual guarantor defendants. (Ca. Bankr. doc. 116.)

**Conclusions of Law**

A threshold determination for this Court to make is whether removal by Vestavia Hills was procedurally proper and, if so, whether this Court has subject-matter jurisdiction. Beyond these

---

[6] Citations to the California Bankruptcy court's docket will be referenced by "Ca. Bankr. Doc. __."

[7] The Court notes that "Approving Rejection of the Commonwealth Agreement" is part of the relief that Vestavia Hills seeks in its motion to sell. (Ca. Bankr. Doc. 121.)

determinations, this Court must also decide the sequence in which the pending transfer and remand/abstention motions should be resolved; a decision that ultimately controls which court — this Court or the California Bankruptcy Court — will decide the issues of remand and abstention.

### *Removal of State Court Action*

Section 1452(a) of Title 28 of the United States Code provides for the removal of claims related to bankruptcy cases. It states that "[a] party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under 1334 of this title." 28 U.S.C. § 1452(a). Here, there is no dispute as to the timeliness of removal, nor is any procedural defect alleged.[8] Accordingly, this Court concludes that the State Court Action was properly and timely removed.

### *Jurisdiction over the Removed Proceeding*

For a court of law, to have jurisdiction is to have the authority to "adjudicate the legal dispute before it." *See Reynolds v. Behrman (In re Atherotech, Inc.),* 582 B.R. 251, 256 (Bankr. N.D. Ala. 2017). And in the context of bankruptcy jurisprudence, that authority is derived by "a conjunctive reading of three federal statutes enacted by Congress as part of the Bankruptcy

---

[8] Vestavia Hills filed its Notice of Removal with the clerk of the United States District Court for the Northern District of Alabama instead of filing it with the bankruptcy clerk of this Court. Commonwealth stops short of alleging that this constitutes a procedural defect but suggests that Vestavia Hills made a procedural misstep by not filing directly with the bankruptcy court clerk. (*See* Doc. 4 at 11) ("First, this [remand] Motion is timely, being filed only fifteen (15) days after the Notice of Removal was filed and only one (1) day after this proceeding was docketed in this Court, **where it should have originally been filed pursuant to the Federal Court's general order of reference**." (Doc. 4 at 11) (emphasis added). The Court does not construe this statement as alleging a procedural defect, nor has Commonwealth advanced it as such, which seems prudent because the removed case was referred here by the District Court without any complaint of procedural impropriety.

Amendments and Federal Judgeship Act of 1984 codified in §§ 28 U.S.C. 1334, 157, and 151." *In re Atherotech*, 582 B.R. at 256, citing *API Holdings, LLC v. Frost Cummings Tidwell Group, LLC (In re Adams Produce Co., LLC),* No. 12-02036-TOM-11, A.P. No. 12-00138-TOM, 2013 WL 542472, at \*1, \*2 (Bankr. N.D. Ala. Feb. 12, 2013).  The starting point for establishing bankruptcy jurisdiction is § 1334 of Title 28. It references four types of bankruptcy proceedings which define the scope of bankruptcy jurisdiction: (1) "cases under title 11", (2) "proceedings arising under title 11", (3) proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987). "The first category refers merely to the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction." *In re Wood*, 825 F.2d at 92. The second category, proceedings "arising under title 11", are the type of proceedings that "involve a cause of action created or determined by a statutory provision of title 11." *Id.* at 96. And the third category, proceedings "arising in" a case under title 11 reference those "'administrative' matters that arising *only* in bankruptcy proceedings . . . would have no existence outside of bankruptcy.'" *Id.* at 97. Proceedings which do not fall into the other three categories but could "*conceivably* have an effect on the estate being administered in bankruptcy" are considered "related to" proceedings. *Id.* at 93 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984). "It is not necessary to distinguish between these four categories for the purpose of determining whether a particular matter falls within bankruptcy jurisdiction as 'these references operate conjunctively to define the scope of jurisdiction.'" *In re Atherotech*, 582 B.R. at 257-58 (citations omitted). "Therefore, it is necessary only to determine whether the matter is at least 'related to' the bankruptcy." *Id.*

In its removal notice, Vestavia Hills contends that the "Removed Case is a case related to the Bankruptcy Case" because of potential indemnification liability, Commonwealth's alleged

prospective ownership interest in property of the estate, and the existence of claims in the removed case the outcome of which "will directly alter Vestavia Hills's rights and liabilities as a Chapter 11 debtor and impact the handling and administration of the Bankruptcy Case." (Doc. 1 at 4-6.) The test for determining whether "related to" jurisdiction exists is a liberal one. *Continental Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999) ("In *Lemco Gypsum,* this Court adopted the following liberal test from *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984), for determining jurisdiction over an adversary proceeding."). It is articulated in the Eleventh Circuit's *In re Lemco Gypsum*[9] decision, the seminal case "on the scope of the bankruptcy court's 'related to' jurisdiction", where the court held:

> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*In re Toledo,* 170 F.3d at 1345; *Lemco Gypsum,* 910 F.2d at 788 (quoting *Pacor,* 743 F.2d at 994); *see also Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6 (expressing approval of the *Pacor* test). Importantly, the "Eleventh Circuit later added that '[t]he key word in the *Lemco Gypsum* test is 'conceivable,' which makes the jurisdictional grant very broad.'" *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 526 (M.D. Ala. 2002), citing *In re Toledo,* 170 F.3d 1340, 1345 (11th Cir.1999).

Under the facts and circumstances of this case, this Court concludes that, under the very broad jurisdictional grant of "related to" jurisdiction, it is at least conceivable that the removed case is related to Vestavia Hills's chapter 11 bankruptcy case. The primary asset of that bankruptcy

---

[9] *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir. 1990).

case is the same asset that is at the center of the dispute between these two parties in the removed litigation. Indeed, Commonwealth's state court complaint, which is the operative complaint of the removed litigation, demands specific performance; namely, for Vestavia Hills to convey Mount Royal Towers, the principal asset of the chapter 11 bankruptcy estate, to Commonwealth. (Doc. 1, Ex. A at 15-16.) In this regard, the State Court Action is a proceeding against the debtor's property — even though it does not have to be in order to fall within the broad sweep of "related to" jurisdiction under the *Lemco Gypsum* test. *Lemco Gypsum,* 910 F.2d at 788 (finding that for "related to jurisdiction" to exist "the proceeding need not necessarily be against the debtor or the debtor's property."). It is conceivable, therefore, that the outcome of the removed litigation could "alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *El Paso E&P Co., L.P. v. CMV Joint Venture,* No. 7:09-cv-1621-RDP, 2010 WL 11579728, at *1, *3 (N.D. Ala. 2010) (quoting *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C.*, 483 F.3d 292, 298 (5th Cir. 2007).

Commonwealth's complaint also demands an award of reasonable attorneys' fees, expenses and costs, compensatory damages, lost profits, special damages, and a declaration determining the rights and liabilities with respect to the Purchase Agreement. (Doc. 1, Ex. A at 16-20.) The state court complaint expressly seeks a determination of "rights" and "liabilities." (*Id.*) As such, it is at least conceivable that "a finding against Debtor would alter its *rights, liabilities*, options, and freedom of action and impact the administration of its bankruptcy estate." *Rayonier Wood Products, L.L.C. v. Scanware, Inc. (In re Scanware, Inc.)*, 411 B.R. 889, 895-96 (Bankr. S.D. Ga. 2009) (emphasis added). Indeed, "[e]ven when there is a possibility that a suit may ultimately have no effect on the estate, this possibility is not enough to conclude that there would be no *conceivable* effect." *In re Houston Regional Sports Network, L.P*., No. 13-35998, A.P. No.

13-03325, 2014 WL 2159534, at *4 (Bankr. S.D. Tex. 2014), citing *In re Wood,* 825 F.2d 90, 94 (5th Cir. 1987).[10]

According to the pending motions, just because this Court has jurisdiction, however, does not mean that it should necessarily exercise it. Indeed, it may be the only point on which these two parties agree. Commonwealth urges this Court to either remand or abstain, two different scenarios that accomplish the same result in terms of this Court's involvement (i.e., this Court will not adjudicate the legal dispute before it if Commonwealth prevails). And the same is essentially true for Vestavia Hills; it advances a different course, transfer instead of remand or abstention, but this Court still would not adjudicate the legal dispute before it if Vestavia Hills prevails. Simply put, the conclusion that this Court has "related to" subject-matter jurisdiction over the removed actions does not end the inquiry here, in the Alabama Bankruptcy Court.

### Sequencing: Motion to Remand versus Motion to Transfer Venue

"Courts are divided about the sequence for ruling on competing motions to transfer or remand." *In re Scanware, Inc.*, 411 B.R. at 895-96 (internal citations omitted). One line of cases holds that "the bankruptcy court to which the state court lawsuit is removed ('the local bankruptcy court') has the right to decide a pending motion to abstain or remand before determining whether venue is proper in the home bankruptcy court." *In re Scanware*, 411 B.R. at 896 (quoting *Frelin v. Oakwood Homes Corp.,* 292 B.R. 369, 380 (Bankr. E.D. Ark. 2003) (collecting cases). This

---

[10] The court notes that jurisdiction is also conferred by 28 U.S.C. §§ 151, 157, and the amended General Order of Reference. "Section 151 of title 28 designates that the bankruptcy judges in each federal district constitute a unit of the district court and that each bankruptcy judge has authority to preside over "any action, suit or proceeding" as defined in §§ 151-158. 28 U.S.C. § 151. Further, 28 U.S.C. § 157(a) provides that each district court may refer any or all bankruptcy cases and proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157. Pursuant to this authority, the District Court issued the amended General Order of Reference which provides for an automatic referral of all cases and proceedings in cases under the Bankruptcy Code to the bankruptcy court." *In re Atherotech, Inc.*, 582 B.R. at 258-59.

approach was taken by the court in *Scanware*. In that case, which involved a debtor who was "not an operating business, its principal place of business was shut down prepetition," and a contract with a very distinct Georgia choice of law provision, the local (Georgia) bankruptcy court decided the remand/abstention motion instead of transferring the motion to the home court in Oregon for a decision. *Id*. at 892, 893, 895-98.

Other courts have found that the "bankruptcy court in which the bankruptcy is pending (usually referred to as the "home court") is in the best position to determine the issues underlying motions to abstain or remand. *See In re Scanware*, *Inc.,* 411 B.R. at 895 (collecting cases); *see also Thomas v. Lorch, Wedlo, Inc. (In re Wedlo, Inc.)*, 212 B.R. 678, 679 (Bankr. M.D. Ala.1996) (transferring case to "home" court in Illinois because that court was in the "best position to determine the issues underlying the motion to reman, abstain, or dismiss."). As explained in *Scanware*:

> The theory underlying this argument "is often referred to as the 'conduit' court theory because it treats the local bankruptcy court as a mere conduit with little role in determining where the removed lawsuit should be heard." *Frelin,* 292 B.R. at 380. These courts argue that the "home court" is "more familiar with the pending bankruptcy case and what may be required for its efficient administration." Furthermore, the "home court" "which would try the case can better evaluate all the interests involved, and determine its own expertise in the particular areas of the law which form the basis of the action, as well as its own scheduling and time constraints." The "conduit" court's "speculation on these matters would not be an adequate substitute for a knowledgeable determination based upon the actual facts and circumstances." Moreover, allowing the "home court" "to rule on the remand minimizes the potential conflicts which could arise due to differences in controlling authority between the Courts." *In re Aztec Indus., Inc.,* 84 B.R. at 467; *see George Junior Republic in Penn.,* 2008 WL 763304, at *5-6; *Tallo,* 321 B.R. at 28-9; *Hohl v. Bastian,* 279 B.R. 165, 177-78 (W.D. Pa. 2002); *Seybolt,* 38 B.R. at 128.

*In re Scanware, Inc.*, 411 B.R. at 895-96. This approach was taken by the United States District Court for the Northern District of Alabama in *El Paso E&P Co., L.P. v. CMV Joint Venture*, a case where the court's abstention analysis informed its decision to transfer. Like *El Paso*, consideration

of factors pertinent to the abstention inquiry here also reveals the propriety of having the home bankruptcy court decide whether to remand or abstain.

Title 28 U.S.C. § 1334 (c)(2), sometimes referenced as the "so-called mandatory abstention provision" provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a cause under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such a proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2); *El Paso E&P Co.*, 2010 WL 11579728, at *4. Alternatively, Title 28 U.S.C. § 1334 (c)(1) allows for permissive abstention "in the interest of justice, or in the interest of comity with State court or respect for State law." 28 U.S.C. § 1334 (c)(1). Additionally, there is 28 U.S.C. §1452(b) which provides for remand of a removed proceeding "on any equitable ground." 28 U.S.C. § 1452(b).[11]

Turning to mandatory abstention, there are three elements necessary to mandate abstention: (1) "the proceeding is based on a state law claim which, although related to a title 11 case, does not arise under title 11 or out of a title 11 case;" (2) "the proceeding could not have been commenced in federal court but for the bankruptcy;" and (3) "the state court can timely adjudicate the cause of action." *El Paso E&P Co.*, 2010 WL 11579728, at * 4, citing *In re Royal*, 197 B.R.

---

[11] "Given the facts of this case, and the corresponding indeterminacy of the mandatory abstention's timely adjudication criterion, the court concludes that deciding first whether to transfer this case is the sound course of action. And this conclusion is unaffected by [Commonwealth's] request to abstain under §1334(c)(1) or, in the alternative, to remand on equitable grounds." *El Paso E&P Co.*, 2010 WL 11579728 at *7. Accordingly, this Court will not detail permissive abstention and equitable remand factors here beyond noting that the factors relevant to both theories, concern the effect of abstention on the efficient administration of the bankruptcy estate and judicial economy, and are thereby considerations "which require evaluation of the state court claims vis-à-vis the bankruptcy proceedings." *Id.* at *6.

341, 349 (Bankr. N.D. Ala. 1996). Here, whether the state court can "timely litigate the cause of action" is disputed.[12] Commonwealth urges that this case has been pending for thirteen months in state court, many documents have been exchanged, and a summary judgment motion, albeit a motion for partial summary judgment, is pending. At the hearing, Vestavia Hills countered that no depositions have been taken, only a status conference and brief hearing have occurred, and there are many disputed fact issues regarding summary judgment. But the question of whether the state court can timely litigate the cause of action is more involved than these respective positions suggest. Indeed, "[t]imely adjudication is not measured against an absolute time guideline, but rather measured by the needs of the bankruptcy case." *In re 3G Properties, LLC*, No. 10-04763-8-JRL, A.P. No. 10-00178-8-JRL, 2010 WL 4027770, at *3 (Bankr. E.D.N.C. 2010), (citing *Suntrust Bank v. Ferrell (In re Pluma),* No. 99-11104C-11G, 2000 WL 33673752, *2 (Bankr. M.D.N.C. 2000) (citing 1 Collier on Bankruptcy ¶ 3.05[2] (15th ed. rev. 2000)). Consequently, "[e]ven if a related proceeding could be adjudicated in state court in a short time, that adjudication may not be timely 'if that amount of delay would prejudice the bankruptcy case.'" *Id.*

Pending before the California Bankruptcy Court is a motion for relief from the automatic stay where Commonwealth seeks to lift the stay for the limited purpose of the state court deciding its partial summary judgment motion. (Ca. Bankr. Doc. 56.) Also pending is Vestavia Hills's adversary proceeding in which it seeks extension of the stay to the individual guarantor defendants. (Ca. Bankr. Doc. 116.) Because resolution of these motions by the California Bankruptcy Court will determine what, if any, litigation can proceed in state court (by virtue of whether the stay is

---

[12] It appears there is no dispute that the removed case is based on state law claims, or that the motion to abstain was timely filed. Vestavia Hills had claimed diversity as an additional source of federal jurisdiction (doc. 10 at 2), and at the hearing, Commonwealth argued that the non-forum defendant rule destroys diversity. In deciding whether transfer is warranted, this Court will not reach the question of whether there is an independent source of federal jurisdiction as it relates to the mandatory abstention analysis.

in place and against whom), the ability of the state court to timely render an adjudication is unknown. Additionally, this Court questions whether Vestavia Hills is an indispensable party to the State Court Action, in which case its presence would be procedurally required and the state court case litigation would be forestalled even if the stay is not extended to the individual guarantor defendants.[13]

Accordingly, this Court finds that ". . . whether the [home] bankruptcy court is willing (or able) to lift the stay controls whether the [Jefferson County Circuit Court] may timely adjudicate the case." *El Paso E&P Co.*, 2010 WL 11579728, at *6. Because "the decision whether to remand this case pursuant to §1334(c)(2) necessarily turns on a contingency beyond the control of the parties or this court," this Court is "unable to meaningfully evaluate [Commonwealth's] mandatory abstention argument absent needless conjecture regarding the [California Bankruptcy Court's] amenability to lifting [or extending] the stay." *Id.* And while this "impasse, however, is not necessarily terminal" this Court finds that, given the facts and circumstances of this particular case, "the [California] bankruptcy court is in the best position to assign relative weight to [the remand and abstention] factors, which require evaluation of the state court claims vis-à-vis the bankruptcy proceedings." *Id.* This is so because "only the [California] bankruptcy court has the requisite familiarity with the title 11 case necessary to consider the comparative advantage of integrating the state court litigation with the bankruptcy." *Id.*

Relatedly, the parties dispute whether the present action constitutes a core or non-core matter. "Mandatory abstention only applies to non-core matters — 'that is, proceedings related to a case under title 11, but not arising under title 11, or arising in a case under title 11." *Thomason*

---

[13] Without deciding, the Court notes the possibility that Vestavia Hills may be an indispensable party under the compulsory joinder rule which holds that "[i]n an action where the final decree affects title, ownership, or interest in real property each possessor of title, ownership or interest must be made part of the action." *Johnston v. White-Spunner*, 342 So. 2d 754, 759 (Ala. 1977).

*Auto Group, L.L.C. v. China America Cooperative Automotive,* No. 08-3365-JLL, 2009 WL 512195, at *1, *5 (D.N.J. Feb. 27, 2009). "[T]his Court has already concluded — as a prerequisite to asserting jurisdiction — that the present case is 'related to' a bankruptcy proceeding, [but] it has not analyzed each claim to determine whether it is core or non-core." *Thomason,* 2009 WL 512195, at *5. Such a determination (core versus non-core) is one that this Court makes regularly. Notwithstanding, this Court recognizes that it is a determination "intimately related to the administration of the bankruptcy estate, *see* 28 U.S.C. § 157(b)(2)," and therefore some courts have held that the "the home court is better positioned to conduct it." *Id.*, citing *Bayou Steel Corp. v. Boltex Mfg. Co., L.P.,* No. 03-1045, 2003 WL 21276338 (E.D. La. June 2, 2003). Under the particular facts and circumstances of this case, this Court agrees and defers to the home bankruptcy court in California to determine whether the claims at issue are core, non-core, or both.

Along those lines, the parties dispute whether the underlying agreement between Vestavia Hills and Commonwealth constitutes an executory contract. While this is again a determination that this Court is called to make with some frequency, it is also a determination that will ultimately impact the administration of the bankruptcy estate. Indeed, under the "functional approach" that some courts utilize in determining whether a contract is executory, the analysis is keyed to "the benefits that assumption or rejection would produce for the estate." *See Sipes v. Atlantic Gulf Communities Corp. (In re General Dev. Corp.),* 84 F.3d 1364, 1375 (11th. Cir. 1996) (citing *In re G-N Partners,* 48 B.R. 462 (Bankr. Minn.1985); *In re Norquist,* 43 B.R. 224 (Bankr. Wash.1984); *In re Booth,* 19 B.R. 53 (Bankr. D. Utah 1982)). For this additional reason, the Court concludes that under the facts and circumstances of this case, "the home court is best positioned to make, and should make, the decision regarding remand [and abstention]," and whether the underlying agreement is an executory contract between Vestavia Hills and Commonwealth. *Cornerstone*

*Dental, PLLC v. Smart Dental Care, LLC,* Adv. No. 07-09002-TLM, 2008 WL 907374, at *1, *2 (Bankr. Idaho. Mar. 31, 2008).

### *Venue*

Turning to the merits of the motion to transfer venue, this Court finds that pursuant to 28 U.S.C § 1412[14] the interests of justice are best served by transferring this proceeding, including the unresolved motion to remand or abstain, to the California Bankruptcy Court where Vestavia Hills's chapter 11 case is pending.[15] "The 'interest of justice' prong is 'a broad and flexible standard which must be applied on a case-by-case basis.'" *A.B. Real Estate, Inc. v. Bruno's, Inc. (In re Bruno's, Inc.)*, 227 B.R. 311, 324 (Bankr. N.D. Ala. 1998) (quoting *In re Manville Forests Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990)). "Although the Court has broad discretion regarding transfer, *see, e.g.*, *In re Terry Mfg. Co., Inc.*, 323 B.R. 507, 509 (Bankr. M.D. Ala. 2005) (citations omitted), the following factors are generally relevant to § 1412's 'interest of justice' analysis: (1) economics of estate administration; (2) presumption in favor of the 'home court;' (3) judicial efficiency; (4) ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders by those familiar with its laws; (6) enforceability of any judgment rendered; and (7) the plaintiff's original choice of forum." *El Paso E&P Co.,* 2010 WL 11579728, at *8, citing *Bruno's*, 227 B.R. at 324-25 (collecting cases).

---

[14] "[M]ost courts look to 28 U.S.C. § 1412 for authority to determine the outcome of a motion to transfer venue of a cause of action removed to the bankruptcy court." *In re Harnischfeger,* 246 B.R. at 434. In the *In re Harnischfeger* decision, the bankruptcy court for the Northern District of Alabama agreed with a majority of courts and likewise concluded that § 1412 is the "appropriate authority for transfer of bankruptcy proceedings." *Id.* This Court concurs and will therefore consider Vestavia Hills's motion in the context of 28 U.S.C. § 1412.

[15] Vestavia Hills moves to transfer venue only under the "interest of justice" prong of § 1412. (Doc. 2.) Accordingly, this Court does not consider transfer "for convenience of the parties." 28 U.S.C. §1412.

### *Economics of Estate Administration and Judicial Efficiency*

"Many courts have held that the most important factor to be considered in determining whether to transfer venue of a bankruptcy proceeding under the interest-of-justice prong is whether transfer would promote the economic and efficient administration of the bankruptcy estate." *Mello v. Hare, Wynn, Newell & Newton, LLP*, No. 10-243, 2010 WL 2253535, at *4 (M.D. Tenn. May 30, 2010) (citing *Bruno's*, 227 B.R. at 324). To that end, "the first factor — economics of estate administration and third factor — judicial efficiency — merge into a single inquiry: whether transferring the civil proceeding to the transferee court facilitates the efficient administration of the bankruptcy." *El Paso E&P Co.,* 2010 WL 11579728, at *9 (quoting *Bruno's*, 227 B.R. at 325 n.45 ("[Efficient administration of the bankruptcy estate] is essentially broken down into 'economics of estate administration' and 'judicial efficiency' in this court's analysis.")).

Here, Vestavia Hills is the undisputed owner of real and personal property that is subject to a Purchase Agreement which Commonwealth claims was breached. That property, Mount Royal Towers, is the primary asset to be administered in Vestavia Hills's chapter 11 bankruptcy case. It is also the asset to which Commonwealth stakes a claim by virtue of demanding specific performance of the Purchase Agreement in the State Court Action. And, it is the asset for which Vestavia Hills has sought approval to sell to a different buyer in the California Bankruptcy Court. Moreover, and quite significantly, Mount Royal Towers is an asset which houses 517 residents. And so, according to argument advanced by Vestavia Hills, Mount Royal Towers is the asset which the debtor must sell quickly in order to protect the best interests of these residents.

That is the reality of this case and the context in which this Court must decide whether the interest of justice warrants transfer. Whether Vestavia Hills has provided "evidence that the preparation or filing of a disclosure statement or a plan of reorganization would be delayed if this

proceeding is not transferred, or that confirmation of a plan would be delayed" is not dispositive. (Doc. 9 at 5.) Here, the preponderance of evidence substantiating that the interest of justice compels transfer is found in the record and is demonstrated by the procedural posture of a complex chapter 11 case. *See In re Taylor, Bean & Whitaker Mortg. Co.,* 2013 WL 1703867, at *4 (granting motion to transfer and holding that "[u]nder the particular circumstances — a large and complex bankruptcy case pending in the home court [] and numerous orders of the home bankruptcy court [] being implicated by the Suit . . . [the home court] is in the best position to evaluate the claims and decide whether or not the Suit should be remanded."). That record includes proof that Vestavia Hills has moved the California Bankruptcy Court to approve a sale of Mount Royal Towers to a different purchaser. (Ca. Doc. 121.) It includes proof that an adversary proceeding has been filed in the California Bankruptcy Court to stay the State Court Action and extend the stay to the individual guarantor defendants. (Ca. Doc. 116.) Further, it includes proof that Commonwealth has filed a motion to lift the stay in the California Bankruptcy Court (Ca. Doc. 56.) and that Commonwealth has filed a motion to compel Vestavia Hills to assume or reject the Purchase Agreement (Ca. doc. 130). With a sale motion, a motion for relief from stay, a motion to compel assumption or rejection of the Purchase Agreement, and a complaint for extension of the stay, all pending before the California Bankruptcy Court, this Court concludes that transfer will promote the economic and efficient administration of the bankruptcy estate.

In reaching this conclusion, the fact that Mount Royal Towers is home to 517 Alabama residents is not lost on this Court. If the debtor's chapter 11 case had been filed here, this Court would have welcomed the opportunity to preside over the bankruptcy case and, as the home court, decide whether to remand the State Court Action or abstain from hearing it. But those are not the facts before this Court. The reality here is that there are limited funds and resources to keep Mount

Royal Towers operational for the 517 residents that live there. Realistically, therefore, selling Mount Royal Towers to a purchaser like the stalking horse described by counsel *may* be the best chance to ensure that Mount Royal Towers stays operational for the benefit of its residents. Given these facts, the Court is persuaded that the efficient administration of the bankruptcy estate is in the best interests of the 517 residents, and that transfer is the best means to facilitate that effort so that the California Bankruptcy Court may address the State Court Action within the context of the debtor's chapter 11 bankruptcy case.

The Court's conclusion that transfer is warranted is not altered by Commonwealth's assertion that Vestavia Hills has chosen "a home court that has no relation to [Mount Royal Towers'] primary assets and operations," or by Commonwealth's claims of forum shopping. (Doc. 9 at 5.) To begin, Commonwealth has not alleged improper venue of the California bankruptcy proceeding, nor moved to dismiss it. More importantly, however, the procedural history of this removed case speaks for itself. To the extent that Vestavia Hills's actions are thinly vailed attempts at forum shopping, this Court is confident that the California Bankruptcy Court is more than capable of considering the same in deciding whether to remand or abstain. Further, under the facts and circumstances of this case, Commonwealth's reliance on the *Bruno's* and *Twyman* decisions is unpersuasive. In *Bruno's*, the court considered the home court's "familiarity with the substantive issues and familiarity with the law to be applied in the proceeding" in the context of evaluating the judicial efficiency of transfer. *In re Bruno's Inc.*, 227 B.R. 311, 327-28 (N.D. Ala. 1998). In doing so, the court found that "[n]o evidence was presented that the Delaware court has any familiarity with the progress of and issues raised in the action, and this Court assumes that there has been no reason or opportunity for that court to do so thus far." *Id.* at 327. The court went onto hold that "[b]ased on the evidence presented, however, the Delaware district court and the Delaware

bankruptcy court are significantly less familiar than this Court with the facts of this case and the progress of this proceeding." *Id.* at 327-28. The same cannot be said in this case. By virtue of the pending motion for relief from stay (which is supported by a substantive memorandum of points and authorities) and the adversary proceeding, the California Bankruptcy Court, unlike the home court in *Bruno's*, has had reason and opportunity to gain familiarity with the substantive issues at stake.

In the context of the instant case, the *Twyman* decision is likewise unpersuasive. In *Twyman,* a settlement proposed in state court was central to the court's judicial efficiency analysis: "the dominant fact is that an overwhelming part of the matters involved in the proceedings before this Court will be resolved if the proposed settlement is consummated. Judicial efficiency based on this fact alone weighs in favor of [denying transfer]." *Twyman v. Wedlo, Inc.,* 204 B.R. 1006, 1015 (Bankr. N.D. Ala. 1996). Irrespective of the settlement, the court also found the fact that a class had been certified in the state court litigation was another reason justifying transfer on grounds of judicial efficiency. *Id.* These facts (a proposed settlement and class certification) significantly informed the court's judicial efficiency analysis and, concomitantly, its decision to deny transfer. And they are facts distinct from the circumstances presented here.

In the instant case, transfer promotes the efficient administration of the bankruptcy estate. Indeed, because "the [home] bankruptcy court is more familiar with the bankruptcy action and what may be required for efficient administration of the estate and ... the [home] bankruptcy court is better positioned to determine how and to what extent this action will affect administration of the bankruptcy estate," this factor strongly weighs in favor of transfer. *El Paso E&P Co.,* 2010 WL 11579728, at *9 (citations omitted).

### Home Court Presumption

"[C]ourts often presume that the proper venue for a proceeding related to a bankruptcy case is in the district where the bankruptcy case is pending (here, the [California Bankruptcy Court])." *Marroquin v. Taylor Bean & Whitaker Mortg. Co. (In Taylor Bean & Whitaker Mortgage Corp.),* No. 3:09-BK-07047-JAF, A.P. No. 13-1024-HCM, 2013 WL 1703867, *1 (W.D. Tx. Apr. 19, 2013). And "§ 1412's consideration of the home court presumption strongly informs the efficiency analysis." *El Paso E&P Co.*, 2010 WL 11579728 at * 9, citing *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 440 (Bankr. N.D. Ala. 2000) ("[T]he home court presumption was created to facilitate an economic and efficient administration of the debtor's estate."). As noted by the court in the *El Paso* decision:

> "The 'home court' is the bankruptcy court where the debtor's case is pending." *Shatzki v. Abrams*, No. 09-2046, 2010 WL 148183, at *3, 2010 U.S. Dist. LEXIS 7987, at *9 (E.D. Cal. Jan. 11, 2010) (citation omitted). "[T]he interests of the bankruptcy estate are paramount," and these interests create "the strong presumption in favor of the 'home court.' " *RFF Family P'ship, LP v. Wasserman*, No. 07-1617, 2010 WL 420014, at *8, 2010 U.S. Dist. LEXIS 57191, at *27-28 (N.D. Ohio Jan. 29, 2010) (citations omitted). Courts crafted this presumption because "[t]here is a strong policy that an adversary proceeding should be conducted in the same court as that in which the debtor's case is pending." *Sudbury, Inc. v. Dlott*, 149 B.R. 489, 492-93 (Bankr. N.D. Ohio 1993) (citation omitted); *id.* at 493 ("There is a general presumption that all matters involving a bankruptcy should be tried in the court in which the bankruptcy is pending.") (citation and internal quotation marks omitted); *see also Manville Forest Prods. Corp.*, 896 F.2d at 1391 ("[T]he district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy.") (citations omitted).

*El Paso E&P Co.,* 2010 WL 11579728 at * 9.

In the instant action, Vestavia Hills filed its bankruptcy petition in the Southern District of California, which makes that court the presumptively proper venue for related civil proceedings. *Irwin v. Beloit Corp.*, *(In re Harnischfeger),* 246 B.R. 421, 440 (Bankr. N.D. Ala. 2000) ("A majority of the courts that have considered whether change of venue is appropriate have created a

presumption that the bankruptcy court in which the debtor's case is pending, the home court, is the proper venue for adjudicating all proceedings in the case, including state actions removed to a bankruptcy court in which the debtor's case is not pending (referred to as the 'conduit court' or 'outpost court').").  As it must, Commonwealth concedes the presumption in favor of the California Bankruptcy Court, arguing instead that the presumption should not be applied here because the presumption was not created to facilitate forum shopping. Commonwealth cites to *Harnischfeger* in support of its position. While this Court concurs that the home court presumption was not created to facilitate forum shopping, Commonwealth's reliance on *Harnischfeger* is unpersuasive. In *Harnischfeger*, a co-defendant, not the debtor, sought to invoke the home court presumption. This key fact provides context for the court's statement that it believed "the home court presumption exists to help the debtor, not to facilitate forum-shopping for co-defendants." *In re Harnischfeger,* 246 B.R. at 440. Here, the debtor has moved for transfer and for the benefit of the home court presumption. To that end, the Court finds that the application of the home court presumption, under the particular circumstances and facts of this case, is consistent with the intended purpose "to facilitate an economic and efficient administration of the debtor's estate." *In re Harnischfeger*, 246 B.R. at 440.

As to the remaining factors, the ability to receive a fair trial, the state's interest in having local controversies decided within its borders, enforceability of any judgment rendered, and the plaintiff's original choice of forum, the Court finds that these factors do not outweigh those favoring transfer. The parties concede that the ability to receive a fair trial is neutral. And the state's interest factor, enforceability of a judgment factor, and the plaintiff's original choice of forum factor, are either insufficient to "counterbalance the strong justification for transfer," or are neutral. *El Paso E&P Co.*, 2010 WL 11579728, at *10. Moreover, should the California

Bankruptcy Court decide to either remand the litigation to the state court in Alabama or abstain, the state's interest in having local controversies decided within its borders is protected and any enforceability of judgment concerns are allayed.

### Conclusion

Under the particular facts of this case, this Court finds that allowing the home bankruptcy court in California to rule on the remand and abstention motion is the best course. The avoidance of piecemeal litigation and minimizing the risk of conflicting judgments are of paramount concern to this Court, as they were to the District Court. But here, transfer safeguards against the undesirable consequences of having too many courts in the kitchen.

In this case, the undersigned must determine which court should decide the State Court Action and when — should the home bankruptcy court in California or the local bankruptcy court in Alabama decide the removed case? Should the case be equitably remanded or is abstention appropriate, whether mandatory or permissive? Answers to these questions involve considerations of the "effect of abstention on the efficient administration of the bankruptcy estate" and "the burden of the bankruptcy court's docket." *Rayonier Wood Products, L.L.C. v. Scanware Inc., (In re Scanware)*, 411 B.R. 889, 897-98 (Bankr. S.D. Ga. 2009). Absent transfer, therefore, this court would be speculating as to the impact that abstention would have on a chapter 11 bankruptcy estate being administered in the Southern District of California. Moreover, absent transfer, this Court would have to speculate on the "burden" of the California Bankruptcy Court's docket.

And furthermore, this Court would have to decide whether the state court could timely adjudicate the litigation, a decision necessarily influenced by how the California Bankruptcy Court decides Commonwealth's pending motion for relief from stay and Vestavia Hills's pending complaint to extend the stay. In most scenarios, unlike this case, remand and abstention could

probably be decided by the local bankruptcy court without issue; here, however, contingencies exist that are in the control and purview of the California Bankruptcy Court, and those contingencies weigh in favor of the home bankruptcy court, in California, deciding whether to remand or abstain.

Regarding Vestavia Hills's transfer motion, "two preeminent considerations, namely the home court's presumptive suitability and that transfer will facilitate the economical and efficient administration of the estate," inform this Court's decision. *Dunlap v. Friedman's, Inc*., 331 B.R. 674, 681 (S.D. W. Va. 2005). "Inasmuch as these two important considerations decidedly favor" Vestavia Hills's position, the Court concludes, in its discretion, that transfer is warranted. *Id*.

Based on these findings and conclusions, the circumstances of this proceeding indicate that the Motion to Transfer is due to be granted. Therefore, this action is due to be transferred to the United States District Court for the Southern District of California. Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the Motion to Transfer is **GRANTED** and this case is hereby transferred to the United States District Court for the Southern District of California**.**

Dated: February 28, 2020

/s/ D. Sims Crawford
D. SIMS CRAWFORD
United States Bankruptcy Judge